UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Michael B. Hari,

        Plaintiff,

v.

James Stuart, Sheriff of Anoka County;
CPL Mingo, Deputy Sheriff of Anoka
County; and Deputy J. Maro, Deputy Sheriff
of Anoka County, variously personally and in
their official capacities,

        Defendants.

Case No. 19-cv-1330 (ECT/TNL)

**OPINION AND ORDER**

_____

Michael B. Hari, *pro se*.

Robert I. Yount, Anoka County Attorney's Office, Anoka, MN, for Defendants James
Stuart, CPL Mingo, and Deputy J. Maro.

_____

In a Report and Recommendation ("R&R") [ECF No. 114], United States
Magistrate Judge Tony N. Leung recommends granting Defendants' Motion for Summary
Judgment [ECF No. 88] and denying Plaintiff's Motion to Strike Under Rule 12 [ECF No.
96]. Plaintiff Michael B. Hari filed objections to the R&R.[1] ECF No. 115. Defendants
filed a response to Hari's objections. ECF No. 117. On de novo review pursuant to 28

---

[1]     Under Local Rule 72.2(b)(1), "[a] party may file and serve specific written
objections to a magistrate judge's proposed findings and recommendations within 14 days
after being served with a copy" of the R&R. Magistrate Judge Leung issued his R&R on
August 21, 2020. ECF No. 114. Because Hari was served with the R&R by mail and
because September 7 was a legal holiday, his deadline to file objections was extended to
September 8 and his objections are therefore timely. *See* Fed. R. Civ. P. 6(a), 6(d).

U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3), the R&R will be accepted because Magistrate Judge Leung's analysis and conclusions are correct.

I

Hari was detained in the Anoka County Jail from April 25, 2019, to August 21, 2019.[2]  Wood Decl. ¶¶ 3, 7 [ECF No. 91]; Yount Decl., Ex. V [ECF No. 92-1 at 42–43]. This case centers on pat-down searches of Hari conducted by Anoka County Jail staff while he was in their custody.  The Anoka County Sheriff's Office has established a written policy governing searches, including pat-down searches, of those detained or incarcerated at the Anoka County Jail.  Yount Decl., Ex. G [ECF No. 92 at 64].  Under this policy, a pat-down search "involves a thorough patting down of clothing to locate any weapons or dangerous items . . . ."  *Id.*  The policy requires staff to conduct pat-down searches of inmates when they enter the secure booking area of the jail, when they leave and return to their housing units, during physical plant searches of entire housing units, whenever inmates come into contact with those outside of their housing unit, and when it is believed they possess contraband.  *Id*. [ECF No. 92 at 65].  Male staff may not pat down female inmates "[e]xcept in emergencies," but female staff may pat down male inmates so long as the search is documented.  *Id*. (citing 28 C.F.R. § 115.15).

Upon arrival at the Anoka County Jail, inmates are given an initial security classification based on various criteria, "including the severity of current charges, serious

---

[2]     Hari is now in custody at the Sherburne County Jail, awaiting trial in a separate case on charges related to the bombing of an Islamic Center and Mosque in Bloomington, Minnesota. *See United States v. Hari*, No. 18-cr-150-1 (DWF/HB) (D. Minn.), ECF No. 1.

2

offense history, [and] escape history[.]"  Wood Decl. ¶ 4.  These classifications are

reviewed seven days and fourteen days after an inmate's arrival at the jail, and then every

thirty days thereafter, unless the inmate is in "[m]ax custody."  *Id.* ¶ 5.  Anoka County Jail

staff initially classified Hari as a maximum custody inmate due to "the severity of [his]

pending criminal charges, his past conviction for child abduction[,] and his attempted

escape from a U.S. Marshals Service transport van[.]"[3]  *Id.* ¶ 6.  "Jail policy and practices"

required Hari to remain in maximum custody for at least 14 days and allowed for

reclassification only after his first 30-day review "to ensure he would not be a safety

concern."  *Id.*

Defendant Deputy JoAnn Maro conducted two pat-down searches of Hari in the

Anoka County Jail, on May 5 and May 10.  Yount Decl., Ex. H [ECF No. 92 at 72–73].

Before the May 5 search, Hari informed Deputy Maro that it was "indecent" for an

unrelated female to touch him under his religious beliefs.  *Id.* [ECF No. 92 at 72].  Both

times Hari requested that a male officer conduct the search.  *Id.* [ECF No. 92 at 72–73].

Each search lasted approximately one minute.  *Id.*  On May 9, Defendant Deputy Mingo

conducted a review of Hari's custody classification and determined that Hari would remain

in maximum custody because "he [was] an escape risk and ha[d] attempted to not comply

with pat searches if performed by a female deputy."  *Id.*, Ex. L [ECF No. 92 at 103].  Hari

---

[3]     Hari was arrested in Illinois in March 2018.  In February 2019, the United States
Marshals Service transported Hari from Illinois to the Sherburne County Jail in Minnesota.
During that transport, Hari attempted to escape.  Hari then remained at the Sherburne
County Jail until he was transferred to the Anoka County Jail in April 2019.  *See* Yount
Decl., Ex. E [ECF No. 92 at 58–61].

filed grievances following each search.  He alleged the searches were unlawful and that jail staff had retaliated against him for objecting to the May 5 search by keeping him in maximum custody.  *Id.*, Ex. Q [ECF No. 92-1 at 3–10].  Jail staff responded to Hari's grievances, explaining he would remain in maximum custody because he was "considered an escape risk," his objection to pat searches was "a security concern," and he was "appropriately classified as a maximum security inmate based off the objective classification scale." *Id.*

In late May, Anoka County Jail deputies conducted a "shakedown" of Hari's cell and found a disconnected electrical outlet, a torn pillow, and scrape marks around a vent. Yount Decl., Ex. S [ECF No. 92-1 at 34].  Deputies moved Hari to "pre-hearing lockdown" based on these violations, and Deputy Mingo later ordered that Hari be placed in administrative segregation, that staff conduct daily "shakedowns" of his cell, and that Hari be "waist belted and placed in leg shackles for movements within the jail." *Id.*  Hari began a hunger strike during this time.  *Id.*

Hari's classification status remained unchanged in June and July, with Anoka County Jail sergeants noting Hari's escape risk, hunger strike, and tampering of an electrical outlet.  *Id.*, Ex. L [ECF No. 92 at 103–04].  During that time, jail staff also observed that Hari and inmates housed in Hari's area began "submitting coordinated grievances and kites for issues and conduct that they had previously not grieved."  Wood Decl. ¶ 13.  Staff attributed the influx of grievances to Hari's influence on other inmates and found that responding to the grievances strained the jail's resources, "necessarily taking time and attention away from other [j]ail functions." *Id.*  In mid-July, Hari was

transferred to the medical unit but remained in administrative segregation.  Yount Decl.,

Ex. L [ECF No. 92 at 104].  In late July, Anoka County Jail staff requested Hari be

transferred to a different facility, citing Hari's occupancy of one of two spots in the jail's

medical unit, escape history, electrical outlet tampering, and that two staff escorts were

required to move him within the jail.  *Id.*, Ex. T [ECF No. 92-1 at 36–37].  Hari was

transferred to the Sherburne County Jail on August 21.  *See id.*, Ex. V [ECF No. 92-1 at

42–44].  These facts are uncontested by Hari.

Hari commenced this action on May 20, 2019.  ECF No. 1.  He now asserts a number

of claims under 42 U.S.C. § 1983 against Defendants in both their official and personal

capacities as well as a claim under the Religious Land Use and Institutionalized Persons

Act ("RLUIPA") against Defendants in their personal capacities only.  Second Am. Compl.

¶¶ 3–5 [ECF No. 61].  Hari seeks injunctive relief on his official-capacity claims as well

as compensatory and punitive damages.  *Id.* ¶ 6 and at 14.

II

Magistrate Judge Leung recommends granting Defendants' motion for summary

judgment with respect to each of Hari's claims.  Summary judgment is warranted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is

"material" only if its resolution "might affect the outcome of the suit" under the governing

substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a

5

verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Hari's operative complaint contains three counts. In Count One, Hari claims Deputy Maro's pat-down searches violated his rights under the Free Exercise Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and RLUIPA. Second Am. Compl. ¶¶ 8, 11–13. In Count Two, Hari claims violations under the Equal Protection Clause of the Fourteenth Amendment based on alleged differences in the treatment of inmates with respect to pat-down searches and status classifications, specifically between male and female inmates and on account of religion. *Id.* ¶¶ 9, 14. In Count Three, Hari claims a violation of his First Amendment Rights based on his allegedly retaliatory transfer to Sherburne County Jail. *Id.* ¶¶ 10, 16–17. Hari's objections concern Counts One and Two.

## A

Hari argues that Magistrate Judge Leung erred in concluding that summary judgment should be granted on his religion-based equal protection claim because Defendants failed to meet their "initial burden" under Rule 56(a). Hari presents two arguments to support his position. First, Hari asserts that both Defendants' Memorandum of Law in Support of Motion for Summary Judgment [ECF No. 89] and their Reply Memorandum of Law in Support of Motion for Summary Judgment [ECF No. 106] mischaracterized his equal protection claim and therefore Defendants "made no satisfactory argument attacking [his] claim." ECF No. 115 at 1–2, 3. Second, Hari contends that the grounds on which Magistrate Judge Leung recommends granting

summary judgment are invalid because they were not raised by Defendants in either memorandum and he did not have an opportunity to respond to them. *Id.* at 3.

Defendants did not substantively address Hari's religion-based equal protection claim in their principal memorandum,[4] *see generally* Defs.' Mem. in Supp., but they did brief the issue in their reply memorandum, arguing that Hari had not "pled or proven that he was treated differently on the basis of religion," *see* Defs.' Reply Mem. at 8. Magistrate Judge Leung then permitted Hari to file a surreply to respond to Defendants' arguments. ECF No. 108; *see* Pl.'s Surreply [ECF No. 111]. In his surreply, Hari argued that Defendants had "mis-state[d]" his claim—that it was not "that [he] was pat-down searched like the other inmates" but that "unlike inmates who expressed no religious belief on the subject of the appropriateness of cross-gender pat-down searches, [he] was subjected [to] the adverse use of his religious views as a criteria in his classification review and was pressured by that use to drop his religious objections in the future." Pl.'s Surreply at 2.

A court "commits reversible error when it grants summary judgment on an issue not raised or discussed by the parties." *UnitedHealth Grp., Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 866 (8th Cir. 2017) (quoting *Heisler v. Metro. Council*, 339 F.3d 622, 631 (8th Cir. 2003)); *cf.* Fed. R. Civ. P. 56(f)(2) (providing a district court may grant summary judgment motion on grounds not raised by party after giving notice and reasonable time to respond). There is no such error here. The R&R accurately describes

---

[4]    Defendants now point out that they did not address the religion-based equal protection claim in their principal brief because "Hari had not pled or presented any factual support for the claim." Defs.' Resp. at 3 n.1. More specifically, Hari had not submitted evidence regarding other similarly situated inmates. *Id.*

Hari's intended claim.  *See* R&R at 15–16.  Moreover, Magistrate Judge Leung's

recommended basis for granting summary judgment on that claim—that Hari has not put

forth evidence that non-religious inmates or inmates of other religions who objected to pat

searches were treated differently than him—reflects a consideration of Hari's arguments

as well as Defendants' position that Hari has "not pled or proven that he was treated

differently on the basis of religion"; the recommendation does not rest "on an issue not

raised or discussed by the parties."  *See* Defs.' Reply Mem. at 8; R&R at 15–16; *see also*

Defs.' Mem. in Supp. at 30 (arguing Hari's "religious objection was not a *but-for* reason

for his classification to max custody").  Defendants' alleged misunderstanding of Hari's

religion-based equal protection claim also is insufficient to preclude summary judgment.

Hari was given a sufficient opportunity to respond to Defendants' briefing and clarify his

claim.  Hari has not identified any genuine dispute of material fact that would bar summary

judgment on his claim or otherwise challenged Magistrate Judge Leung's legal reasoning

that Defendants are entitled to judgment as a matter of law.

B

Hari also objects to Magistrate Judge Leung's conclusion with respect to Count One

that the two cross-gender pat-down searches conducted by Deputy Maro were a de minimis

imposition due to the "short term and sporadic" nature of the searches.  R&R at 10–11

(quoting *Blake v. Cooper*, No. 10-cv-6063, 2013 WL 523710, at *2 (W.D. Mo. Feb. 12,

2013), *aff'd sub nom. Blake v. Missouri Dep't of Corr.*, 628 Fed. App'x 465 (8th Cir.

2016)).  Hari argues that repeated cross-gender pat-down searches conducted as a matter

of policy (rather than isolated incidents) constitute a "substantial burden on religious practice." ECF No. 115 at 3–4.

De minimis impositions on a pretrial detainee are those that "do not rise to a level of constitutional significance." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see Bell v. Wolfish*, 441 U.S. 520, 539 n. 21 (1979); *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also de minimis*, Black's Law Dictionary (11th ed. 2019) (defining de minimis as "so insignificant that a court may overlook it in deciding an issue or case."). For example, in *Smith*, the Eighth Circuit held that an inmate's exposure to raw sewage for four consecutive days constituted a de minimis imposition and "d[id] not implicate constitutional concerns." 87 F.3d at 268. Here, Hari was subjected to only two pat-down searches by Deputy Maro, each lasting approximately sixty seconds. Yount Decl., Ex. H [ECF No. 92 at 72–73]. Hari does not allege that the pat-downs were abusive or forceful or even out of the ordinary beyond the gender of Deputy Maro.

In support of his position, Hari cites *Forde v. Baird* for the premise that repeated cross-gender pat-down searches over a religious objection are more than a de minimis imposition. 720 F. Supp. 2d 170 (D. Conn. 2010). As a preliminary matter, *Forde* is not binding authority. Regardless, the facts in this case are significantly different from those in *Forde*. Forde, a female inmate, argued that cross-gender pat searches substantially burdened her religious exercise as a practicing Sunni Muslim. *Id.* at 176. Forde testified that she was searched "on many occasions" by male correctional officers, sometimes in the presence of female officers, and that only half of her requests to be pat searched by a female officer were honored. *Id.* at 174–75. Forde also presented expert testimony that "in many

9

circumstances, the summoning of a female correctional officer to conduct a pat search in a non-emergency situation could involve nothing more than an immaterial minute or two delay." *Id.* at 174.  The court concluded that the burden placed on Forde's free exercise was not de minimis in light of the number of searches and the frequency with which her requests were honored. *Id.* at 176.  The court further reasoned that, because a female officer was at times present, a same-gender search would not have significantly impeded a compelling government interest. *Id.*  Additionally, the respondent in *Forde* failed to prove that there was a significant penological interest in allowing cross-gender pat-searches over same-gender pat-searches. *Id.* at 178.  Here, in contrast,  Anoka County Jail staff testified that because there is a "high volume of routine pat searches every day," requiring same-gender pat-down searches of male inmates would disrupt jail staffing and resources, as well as the security of the jail.  Wood Decl. ¶¶ 9–11.  Security would be diminished, for instance, if "one or more deputies [were required] to leave their assigned locations and respond to other locations for same-gender pat searches of male inmates." *Id.* ¶ 10.

Hari claims that the pat-down searches should not be considered de minimis because they were conducted pursuant to jail policy and were not isolated instances.  ECF No. 115 at 3–4.  Yet out of the several months he resided at the Anoka County Jail, Hari was subjected to only two cross-gender pat-down searches, each of which lasted approximately one minute.  Unlike in *Forde*, the vast majority of Hari's searches were conducted by deputies of the same gender.  Concluding that the searches of Hari were de minimis impositions is in line with authority in this District, *see Ha'Keem v. Mesojedec*, No. 16-cv-348 (JNE/SER), 2019 WL 1118916, at *8 (D. Minn. Jan. 16, 2019), *report and*

10

*recommendation adopted in relevant part and rejected in part*, 2019 WL 927314, and Hari

has not provided any authority to the contrary.  Because Magistrate Judge Leung correctly

concluded that the two searches conducted by Deputy Maro were de minimis impositions

on Hari, summary judgment is appropriate on this claim.

III

Magistrate Judge Leung recommends denying Hari's motion to strike a footnote and

"other scurrilous language" from Defendants' summary-judgment memorandum.  R&R at

2.  He also recommends granting Defendants' motion for summary judgment with respect

to Hari's claims for injunctive relief against Defendants in their official capacities and

Hari's remaining claims in Counts One through Three.  *Id.* at 9–18.  Neither Hari nor

Defendants have objected to these recommendations.  Therefore, these portions of the R&R

will be reviewed for clear error.  *See* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d

793, 795 (8th Cir. 1996) (per curiam).  Finding no such error, these recommendations will

be accepted.

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings in the above-

captioned matter, **IT IS ORDERED THAT**:

1.      Plaintiff's Objections to the Report and Recommendation [ECF No. 115] are

**OVERRULED**;

2.      The Report and Recommendation [ECF No. 114] is **ACCEPTED** in full;

3.      Plaintiff's Motion to Strike Under Rule 12 [ECF No. 96] is **DENIED**;

11

4.      Defendants' Motion for Summary Judgment [ECF No. 88] is **GRANTED**;

and

5.      This action is dismissed **WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 2, 2020                         s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court

12